1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KELLEY SULLIVAN,                         No. 2:23-cv-01981-DJC-CKD

12              Plaintiff,

13        v.                                  ORDER

14   THE HOME DEPOT, U.S.A., INC.,

15              Defendants.

16

17

18        Pending before the Court is Defendant's Motion for Summary Judgment.
Plaintiff brought nine causes of action against Defendant largely stemming from
Plaintiff's allegations that her religious beliefs precluded her from wearing a mask,
which ultimately resulted in her termination from Defendant's store.  For the reasons
discussed below, the Court GRANTS Defendant's Motion for Summary Judgment.

                              **BACKGROUND**

        Plaintiff Kelley Sullivan brings the instant action against Defendant Home Depot
U.S.A., after she was terminated from her position as a Pro Account Sales Associate at
the store's location in Carmichael, California.  (Defendant's Separate Statement of

28

1    Undisputed Facts ("DSSUF") (ECF No. 36-4) ¶ 1.)[1]  Plaintiff's role involved acting as a

2    sales associate on the store's floor and required direct contact with other associates

3    and customers.  (*Id*. ¶ 3.)  Plaintiff was employed by Defendant during the start of the

4    COVID-19 pandemic in June 2020.  (*See id*. ¶ 1.)  From June 2020 through January

5    2023, the State of California implemented various masking guidelines.  (*See id*. ¶¶ 4–

6    9.)  During that time, Defendant complied with the State's various masking

7    requirements.  (*Id*. ¶ 17.)  By March 2022, masks were not required by the State for

8    vaccinated or unvaccinated individuals.  (*Id*. ¶ 8.)  However, masks were still required

9    where a work location was determined to be in "outbreak status."  An "outbreak" was

10   defined as three suspected, probable or confirmed COVID cases within a 14-days

11   period among people who are epidemiologically linked.  (*Id*. ¶ 9.)

12          From January 2021 through January 2022, Plaintiff was on a leave of absence

13   from her job following certifications from her health care providers that mask wearing

14   exacerbated her health conditions.  (*See id*. ¶¶ 11–15.)  Plaintiff returned to work in

15   early January 2022 and had no medical restrictions relating to mask use.  (*Id*. ¶¶ 14,

16   15.)  Plaintiff had another leave of absence and returned to work on January 2, 2023,

17   which was a time when the Carmichael store was determined to be in "outbreak

18   status." (*Id*. ¶ 19.)[2]  Plaintiff refused to wear a mask, even though she was informed

19   that the store was in outbreak status.  (*Id*. ¶¶ 21–22.)  Plaintiff had a meeting with Store

20   Manager Jeff Lawson and Assistant Manager Sheri Ables where she was told that

21   masks were required because the store was in outbreak status.  (*Id*. ¶ 20.)  Kathleen

22   Burris, a Direct Human Resources Manager, was also involved in the conversation.

23   (*Id*.-¶ 23.)  After Plaintiff refused to wear a mask, she was told that she would be

24   required to leave the store, but was offered unpaid leave of absence until the store

---

[1] The Court only cites portions of the separate statement of facts provided by Defendant that Plaintiff states are undisputed.  The Court notes that some of the facts are technically disputed by Plaintiff, but upon review of the evidence, the Court finds that there is not a genuine dispute.

[2] Plaintiff disputes whether the store was in "outbreak status" but provides no evidence to support her dispute as to this fact.

1  was no longer in outbreak status.  (*Id.* ¶ 23.)  Plaintiff rejected that offer and said that

2  she would not leave the store and that someone would have to remove her.  (*Id.* ¶ 24.)

3  Plaintiff was ultimately terminated for insubordination.  (*Id.* ¶ 25.)

4      Plaintiff brings several causes of actions against Defendant for violations of the

5  Fair Employing and Housing Act, the Bane Act, and the California Constitution.[3]

6  Defendant now moves for Summary Judgement.  The matter is fully briefed and was

7  ordered submitted without oral argument pursuant to Local Rule 230 (*See* MSJ (ECF

8  No. 36), Opp'n (ECF No. 39), Reply (ECF No. 47)).

9                              **LEGAL STANDARD**

10      Summary judgment may be granted when the evidence shows that there is no

11  genuine issue as to any material fact and the moving party is entitled to a judgment as

12  a matter of law.  Fed. R. Civ. P. 56(c).  The principal purpose of summary judgment is

13  to dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477

14  U.S. 317, 325 (1986).  Therefore, the "threshold inquiry" is whether there are any

15  factual issues that could reasonably be resolved in favor of either party, or conversely,

16  whether the facts are so one-sided that one party must prevail as a matter of

17  law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986).  However, "[o]nly

18  disputes over facts that might affect the outcome of the suit under the governing law

19  will properly preclude the entry of summary judgment."  *Id.* at 248.

20      In a summary judgment motion, the moving party must inform the court of the

21  basis for the motion and identify the portion of the record that it believes

22  demonstrates the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at

23  323.  If the moving party meets its initial burden, the burden then shifts to the

24  opposing party, which must establish that there is a genuine issue of material

25  fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  To

26  meet their burden, parties must either cite to materials in the record supporting their

27

28

---

[3] Plaintiff dismisses her cause of action for Medical Experimentation under California Health and Safety Code §§ 24170 et seq.  (Opp'n (ECF No. 39) at 22.)

1  position or show that the materials cited do not establish the absence or presence of a

2  genuine dispute.  Fed. R. Civ. P. 56(c)(1).

3       For the opposing party to succeed and avoid summary judgment, they "must

4  do more than simply show that there is some metaphysical doubt as to the material

5  facts."  *Matsushita*, 475 U.S. at 586.  Rather, the opposing party must produce enough

6  evidence such that the specific facts set forth by the nonmoving party, coupled with

7  undisputed background or facts, are such that a reasonable jury might return a verdict

8  in its favor.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

9  Cir. 1987).  In other words, for the moving party to succeed, the court must conclude

10  that no rational trier of fact could find for the opposing party.  *Matsushita*, 475 U.S. at

11  587.  However, so as not to usurp the role of the jury, "[c]redibility determinations, the

12  weighing of the evidence, and the drawing of legitimate inferences from the facts are

13  jury functions," and so the court draws all reasonable inferences and views all

14  evidence in the light most favorable to the opposing party.  *Liberty Lobby*, 477 U.S. at

15  255; *Matsushita*, 475 U.S. at 587–88.

16  **DISCUSSION**

17  **I.    Evidentiary Objections**

18       As an initial matter, both parties have lodged evidentiary objections to the

19  other's evidence.  (*See* ECF Nos. 45, 50.)  At the summary judgment stage, district

20  courts consider evidence with content that would be admissible at trial, even if the

21  form of the evidence would not be admissible at trial.  *See Fraser v. Goodale,* 342 F.3d

22  1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles,* 253 F.3d 410, 418–19 (9th Cir.

23  2001) (explaining that at summary judgment, "a party does not necessarily have to

24  produce evidence in a form that would be admissible at trial.").

25       To the extent that the Parties base evidentiary objections on lacking foundation,

26  speculation, constituting an improper legal conclusion, and/or relevance, other district

27  courts have disregarded such objections as "duplicative of the summary judgment

28  standard itself[.]"  *See, e.g., Burch v. Regents of Univ. of Cal.,* 433 F. Supp. 2d 1110,

1    1119 (E.D. Cal. 2006).  However, Plaintiff also objects to certain pieces of evidence on

2    other grounds.  First, Defendant argues that the Rosen Declaration (ECF No. 42)

3    should be dismissed in its entirety for failure to disclose a witness in violation of

4    Federal Rule of Civil Procedure 37(c)(1).  Although the Court finds that the Plaintiff

5    acted improperly in failing to disclose the witness, the Court finds that the failure here

6    is harmless.  Second, Defendant argues that Plaintiff's recording of, and reliance on,

7    the audio of a private workplace meeting without obtaining the consent of the other

8    parties violated California Penal Code § 632.  Without opining on whether the

9    recording itself was improper, the Court still considers its contents to the extent that it

10   would be admissible at trial. [4]

11       **II.    Requests for Judicial Notice**

12       Both Parties also filed Requests for Judicial Notice.  (ECF Nos. 37, 40, 48.)

13   Courts may take judicial notice of an adjudicative fact that is "not subject to

14   reasonable dispute."  Fed. R. Evid. 201(b); *see also Khoja v. Orexigen Therapeutics,*

15   *Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("clarify[ing] when it is proper to take judicial

16   notice of facts in documents, or to incorporate by reference documents into a

17   complaint, and when it is not [ ]").  A fact is "not subject to reasonable dispute" if it "(1)

18   is generally known within the trial court's territorial jurisdiction; or (2) can be

19   accurately and readily determined from sources whose accuracy cannot reasonably

20   be questioned."  Fed. R. Evid. 201(b)(1)–(2).

21       From Defendant's Request, the Court grants the request in part and takes

22   judicial notice of the following documents:

23           •   Exhibit E: California Department of Public Health Guidance for the Use of

24               Face Masks, March 14, 2022.

25

26   _____

27   [4] Plaintiff's Complaint also discusses her belief against receiving the COVID-19 vaccine but concedes
     that she has never received the vaccine.  (DSSUF ¶ 35.)  Thus, the Court focuses only on her claims as
28   they relate to mask-wearing.

- Exhibit F: California Department of Industrial Relations COVID-19
  Emergency Temporary Standards Frequently Asked Questions,
  November 8, 2022.
- Exhibit G: California Department of Public Health Non-Healthcare
  Congregate Facilities COVID-19 Outbreak Definitions and Reporting
  Guidance for Local Health Departments, June 20, 2023 (originally
  published on May 1, 2020).
- Exhibit H: California Code of Regulations, § 3205 (8 C.C.R. § 3205)
- Exhibit I:  California Code of Regulations, § 3205 (8 C.C.R. § 3205.1)
- Exhibit J: Cal/OSHA's Emergency Temporary Standards, § 3205,
  effective May 2, 2022 – February 2, 2023.
- Exhibit K: Cal/OSHA's Emergency Temporary Standards, § 3205.1,
  effective May 6, 2022- February 2, 2023.

The Court need not rely on any other document submitted by Defendant, and denies the remainder of the Request for Judicial Notice as moot.  As to Plaintiff's Request, the Court grants Plaintiff's request as to Exhibit 1: California Department of Public Health Guidance for the Use of Face Masks, February 28, 2022, and need not rely on the remaining documents.  Accordingly, the Court denies the remainder of the Plaintiff's request.

### III.    Legitimacy of State Regulations

A large part of Plaintiff's Opposition focuses on what she perceives to be the illegitimacy of the State regulations and guidelines on which Defendant relied on in adopting its COVID-19 policies.  In particular, Plaintiff argues that Governor Newsom, via the California Public Health Department, violated the California Administrative Procedure Act with the executive orders issued pertaining to COVD-19 and are therefore invalid.  Additionally, Plaintiff argues that Defendant's compliance with State guidelines was pretext for violating her rights.  Defendant contends that Plaintiff's

1   claims are meritless, and that the CDPH masking requirements were binding on

2   employers, like Defendant.

3       First, any argument related to Governor Newsom or the Secretary of State's

4   authority to implement directives during the COVID-19 pandemic are misplaced.  The

5   State is not a defendant in this suit and any hypothetical relief granted on a claim that

6   the Secretary exceeded her authority would be meaningless.  Second, there is no

7   genuine dispute of material fact that Defendant, as an employer, was required to

8   abide by State guidelines related to COVID-19.  (*See* Def. RJN Ex. F.)  As discussed

9   above, the Court takes judicial notice of the State guidelines Defendant was following

10  during the time of the alleged incidences.  Aside from arguments about the APA,

11  Plaintiff has provided no relevant authority to support her argument that Defendant,

12  as an employer, did not have to abide by State guidance in the absence of a court

13  order invalidating them, or any evidence that Defendant believed it did not have to

14  abide such guidance.  Whether Defendant used the guidelines as pretext is a question

15  subject to discussion below, but to the extent Plaintiff disputes the legitimacy of the

16  State guidelines themselves, or that Defendant had to follow such guidelines, the

17  Court rejects such arguments.

18      **IV.    FEHA Claims**

19      Plaintiff brings several claims under California's Fair Employment and Housing

20  Act.  Specifically, Plaintiff brings claims for religious discrimination, failure to

21  accommodate, religious harassment, discrimination based on medical condition,

22  harassment based on medical condition, retaliation and failure to prevent

23  discrimination.  Defendant argues that there is no genuine dispute of material fact as

24  to any of these causes of action.  The Court agrees.

25      **A. Religious Discrimination**

26      Plaintiff's second cause of action alleges a violation of FEHA for religious

27  discrimination.  Under California Government Code § 12940(a), it is unlawful for an

28  employer to discriminate against a person in compensation or in terms, conditions, or

1  privileges of employment because of a person's religious creed.  Plaintiff theorizes

2  that she was discriminated against by Defendant because her religious beliefs

3  precluded her from wearing a mask, and that her employment was terminated

4  because of her beliefs.

5       A plaintiff in an employment discrimination case may prove her claims via the

6  burden-shifting test established by the Supreme Court in *McDonnell Douglas Corp. v.*

7  *Green,* 411 U.S. 792 (1973).[5]  *See DeJung v. Superior Court,* 169 Cal. App. 4th 533,

8  550 (2008).  Under this framework, the plaintiff must first establish a *prima facie* case

9  of discrimination, then the defendant may show that the action was taken for a

10  legitimate, non-discriminatory reason, and finally, the plaintiff may rebut the

11  defendant's evidence by showing the reasons offered by the defendant are a pretext

12  for discrimination.  *McDonnell Douglas*, 411 U.S. at 802–05.

### 1. *Prima Facie* Religious Discrimination

14       Generally, a plaintiff must first present a *prima facie* case showing that (1) she

15  was a member of a protected class, (2) she was qualified for the position he sought or

16  was performing competently in the position he held, (3) she suffered an adverse

17  employment action, such as termination, demotion, or denial of an available job, and

18  (4) some other circumstance suggests discriminatory motive.  *See Guz v. Bechtel Nat.*

19  *Inc.,* 24 Cal. 4th 317, 355 (2000) (outlining the burden-shifting framework in an age

20  discrimination FEHA claim but stating that the test applies to "claims of discrimination"

21  that are "based on a theory of disparate treatment."); *see also Hittle v. City of Stockton,*

22  *Cal.,* 101 F.4th 1000, 1012 (9th Cir. 2024) (stating that the fourth element in the FEHA

23  context is characterized as "some other circumstance suggest[ing a] discriminatory

24  motive.").[6]

25  _____

26  [5] An employee may also prove a FEHA case with direct evidence, and in such instances the burden-shifting framework is not used.  *DeJung v. Superior Court,* 169 Cal. App. 4th 533, 549-50 (2008).  Here,

27  Plaintiff's arguments of discrimination appear to be based solely on circumstantial evidence.

28  [6] Plaintiff's Opposition appears to analyze the religious discrimination cause of action with the standard outlined for failure to accommodate theory.  The Court proceeds with its analysis applying the

1    Defendant first argues that Plaintiff cannot establish a *prima facie* case of

2  discrimination because she has not provided any evidence suggesting a

3  discriminatory motive for her termination.  To support this argument, Defendant

4  points to Plaintiff's deposition testimony where she states that she was unaware of

5  anyone associated with Defendant who had a bias against her because of her religion.

6  (Chun Dec. (ECF No. 36-1, Ex. A) at 252:17–19.)  Plaintiff argues that she need not

7  present direct evidence of bias and appears to rest on the failure to accommodate

8  Plaintiff's beliefs as evidence of a discriminatory motive.  Plaintiff is correct that direct

9  evidence need not be presented to make her case, *see DeJung,* 169 Cal. App. 4th at

10  549–50, but as discussed below the Court concludes that she has not stated a claim

11  for failure to accommodate, and so that alleged failure does not lend itself to her

12  religious discrimination theory.

13    Plaintiff also argues that her termination was discriminatory because

14  insubordination was a pretext for the true reason she was terminated.  Rather, Plaintiff

15  argues that she was terminated because she refused to mask due to a violation of her

16  religious beliefs and was told to leave for that reason.  However, it is undisputed that

17  Plaintiff returned to work at a time when the store was in "outbreak status" and refused

18  to wear a mask.  (DSSUF ¶¶ 21–22.)  Moreover, Plaintiff was offered an unpaid leave of

19  absence for the time the store was in "outbreak status" (*Id.* ¶ 23), but Plaintiff refused

20  the offer and continued to refuse to wear a mask and refuse to follow a directive to

21  leave the store (*Id.* ¶ 22, 25.)  To the extent that Plaintiff relies on the statement made

22  by Davis about being fired for not wearing a mask, it appears that insubordination is

23  not inconsistent with Plaintiff's actions since she refused to leave the store after being

24  told to do so and failing to wear a mask while at the store.  Thus, this argument also

25  does not support a finding of religious discrimination.

26

27  _____

appropriate standards.  The Court will address the failure to accommodate standard when addressing
28  the FEHA failure to accommodate cause of action.

1      Plaintiff also appears to argue that Defendant's requirement that she was told to

2 remove religious pins from her work apron[7] while others were allowed to wear other

3 symbols, constitutes sufficient evidence of discrimination to support a *prima facie*

4 claim.  (Opp'n at 10.)  Although Plaintiff discusses this evidence in the context of

5 pretext[8], even when considered as part of a *prima facie* claim, the Court finds that

6 Plaintiff's cause of action still fails.  It is undisputed that Lawson and Burris were

7 unaware that the two employees in question were violating the dress code.  (DSSUF

8 ¶¶ 30, 31; Chun Dec. at 206:4–208:10.))  Moreover, in her deposition Plaintiff

9 acknowledged that there was another Christian employee who was not told that she

10 had to remove her religious pin even though Plaintiff was required to.  (Chun Dec.

11 at 181:6–188:1.)  Accordingly, Plaintiff has not provided any evidence suggesting that

12 supervisors treated her differently from other employees because of her religious

13 beliefs.  The Court finds that no genuine dispute of material fact exists as to whether

14 there was "some other circumstance suggesting a discriminatory motive" and that

15 Plaintiff has failed to establish a *prima facie* claim of religious discrimination.[9]

16    **B.  Failure to Accommodate**

17      Plaintiff's third cause of action alleges that Defendant violated FEHA because

18 her supervisors failed to accommodate Plaintiff's religious beliefs.  These individuals

19 are also alleged to have taken adverse employment actions against Plaintiff, including

20 by not meaningfully engaging in an interactive process and denying all requests for

---

[7] Plaintiff also states that other employees were not penalized for wearing a mesh mask or for wearing a mask pulled down.  However, Plaintiff has included no evidence of these "other employees" who were treated differently.

[8] Because the Court concludes that Plaintiff has not established a prima facie case, the Court need not reach the second and third *McDonnell Douglas* steps, which would include pretext.  *See Cal. Fair Emp. & Hous. Com. v. Gemini Aluminum Corp.,* 122 Cal. App. 4th 1004, 1020 (2004) ("A discussion of pretext is premature until the employee establishes the prima facie case and the employer offers a legitimate, nondiscriminatory reason for the adverse employment action.").

[9] Because Plaintiff has failed to establish a *prima facie* case of discrimination, her failure to prevent discrimination claim also fails.  *See Mayes v. Kaiser Found. Hosp.*, 917 F. Supp. 2d 1074, 1079–80 (E.D. Cal. 2013) (citation omitted).

1    religious accommodations regardless of the information provided because of a "zero

2    tolerance" policy for not wearing masks.

3        Under California Government Code § 12940(l)(1), an employer is required to

4    make reasonable accommodations for their employees' religious beliefs unless doing

5    so would impose an undue hardship.  FEHA claims for failure to accommodate are

6    analyzed under a burden-shifting framework.  *Bolden-Hardge v. Off. of Cal. State*

7    *Controller,* 63 F.4th 1215, 1222 (9th Cir. 2023) (citation omitted).  First, the employee

8    must plead a *prima facie* case of failure to accommodate religion.  *Id.* Second, if the

9    employee is successful, the employer can show that it was nonetheless justified in not

10   accommodating the employee's religious beliefs or practices.  *Id.* (citation omitted).

11                  **1.  *Prima Facie* Case**

12        To establish a *prima facie* failure to accommodate claim, the "employee must

13   establish. . . that he or she had a bona fide religious belief, of which the employer was

14   aware that conflicts with an employment requirement."  *Soldinger v. Nw. Airlines, Inc.,*

15   51 Cal. App. 4th 345, 370 (1996).

16        Defendant argues that Plaintiff cannot establish a *prima facie* failure to

17   accommodate religion claim because her refusal to wear a mask is not based on a

18   religious belief.  To support their argument, Defendant cites to the factors developed

19   in the concurring opinion in *Malnak v. Yogi,* 592 F.2d 197 (3d Cir. 1979), which some

20   California courts, and district courts have adopted in the FEHA context to determine if

21   a set of beliefs is religious.  *See, e.g., Friedman v. Southern Cal. Permanente Med.*

22   *Grp.,* 102 Cal. App. 4th 39, 66 (2002); *Meintser v. T-Mobile USA, Inc.,* No. 2:23-cv-

23   02562-TLN-CKD, 2024 WL 4289579, at *5–6 (E.D. Cal. Sept. 25, 2024).  Defendant

24   highlights Plaintiff's own testimony where she admits to not knowing whether her

25   religious prohibits or discourages the use of masks.  (DSSUF ¶ 26.)  Plaintiff argues

26   that her religious beliefs are sincerely held as her beliefs about wearing masks come

27   straight from God.

28

                                             11

1       In *Detwiler v. Mid-Columbia Medical Center,* ---- F.4th ----, 2025 WL 2700000

2 (9th Cir. 2025), the Ninth Circuit addressed the "bona fide religious belief" aspect of

3 the *prima facie* inquiry.[10]  Acknowledging that the Ninth Circuit has not yet endorsed a

4 test for determining whether a belief is religious or secular, the court explained that

5 entirely conclusory assertions of religious belief need not be taken as true.  *Id.* at *6.

6 However, whether a belief is religious should not "turn upon a judicial perception of

7 the particular belief or practice in question; religious beliefs need not be acceptable,

8 logical, consistent, or comprehensible to others. . . ."  *Id.* (citation omitted).  Thus, a

9 plaintiff seeking a religious exemption must plead a sufficient nexus between her

10 religion and the specific belief in conflict with the work requirement.  *Id.*  "Invocations

11 of broad, religious tenets cannot, on their own, convert a secular preference into a

12 religious conviction."  *Id.*

13       Plaintiff alleges that she is a member of a protected class within the meaning of

14 FEHA because she is a Christian.  Plaintiff states that she had a religious belief that

15 masking was straight from the "pits of hell", that God told her "it [including masks] was

16 all a lie" and "tyranny. . .[and] he's against all tyrannical tyranny."  God also told her not

17 to mask anymore at the end of 2022.  This is sufficient to create a triable issue of fact

18 as to Plaintiff's religious beliefs.

19       **2.  Reasonable Accommodation**

20       Defendant argues that even if Plaintiff is found to have a sincere religious belief

21 and requested a religious accommodation, Defendant did, in fact, offer Plaintiff a

22 reasonable accommodation: an unpaid leave of absence until the store was no longer

23 in outbreak status.  Additionally, Plaintiff's other requests for accommodations were

24 unreasonable.  Plaintiff argues that "[n]o meaningful discussion about a reasonable

25

26 ---

[10] The Court notes that *Detwiler* discusses a motion to dismiss, whereas the motion here is for summary

27 judgment, and will proceed with its analysis with the proper standards in mind.  Additionally, the Court notes that *Detwiler* discusses a Title VII failure to accommodate religion claim, but "FEHA is interpreted

28 consistently with Title VII."  *Bolden-Hardge,* 63 F.4th at 1222 n.2 (collecting cases) .

1    accommodation" ever occurred and that she was told by Defendant's managing

2    agents that her religious beliefs would not be accommodated.

3        If a *prima facie* failure to accommodate religion is established, the employer

4    must then show that it initiated good faith efforts to accommodate, or that no

5    accommodation was possible without producing undue hardship. *Soldinger,* 51 Cal.

6    App. 4th at 370 (citations omitted). Under FEHA, "a reasonable accommodation is

7    one that eliminates the conflict between the religious practice and the job

8    requirement." 2 C.C.R. § 11062. Any reasonable accommodation is sufficient to meet

9    an employer's obligations. *Soldinger,* 51 Cal. App. 4th at 370. Importantly, "the

10    employer need not adopt the <u>most</u> reasonable accommodation nor must the

11    employer accept the remedy preferred by the employee. *Id.* The reasonableness of

12    the employer's efforts to accommodate is determined on a case-by-case basis. *Id.*

13        Here, the circumstances were such that while Plaintiff's role involved direct

14    contact with other employees and customers, she did not want to wear a mask at a

15    time when the store was in "outbreak status." (DSSUF ¶¶ 3, 21, 22.) Defendants met

16    with Plaintiff and in response to her stated religious beliefs, offered her unpaid leave

17    until the store was no longer in "outbreak status." (*Id.* ¶ 23); *see* 2 C.C.R. § 11062

18    defining a reasonable accommodation and explaining that allowing time off to avoid a

19    conflict with religious observances may constitute a reasonable accommodation).[11]

20    Plaintiff's issue appears to be that she did not receive the accommodation she wanted.

21        Moreover, it is clear that the alternative accommodations that Plaintiff proposes

22    would not have been acceptable given California's regulatory requirements at the

23    time. Plaintiff essentially wanted either (1) paid leave or (2) to not wear a mask at

24    work. (*See* PSSUF (ECF No. 41) ¶¶ 65, 80 stating she would have accepted paid time

25    off, wearing a mesh mask, paid medical leave, and or signing a waiver or paying an

26

27    [11] The Plaintiff disputes this fact but states "Plaintiff was given only one choice in response to her refusal to mask – leave and be unpaid." The Court finds that this does not contradict the Defendant's

28    statement and considers it undisputed.

13

1   "OSHA fine".)  These options were not possible as Plaintiff had used her paid leave or

2   would not have followed then-existing state requirements.  Additionally, to the extent

3   that Plaintiff sought Defendant's "extra paid leave for COVID", it is undisputed that the

4   policy was expired by the time Plaintiff sought to make use of it.  (Sullivan Dec. (ECF

5   No. 44) ¶ 15, Ex. 5; Reply at 5.).  Accordingly, , the Court finds that granting summary

6   judgment on Plaintiff's third cause of action is proper.

7       **C. Religious Harassment**

8       Plaintiff also brings a cause of action under FEHA for religious harassment.

9   Plaintiff alleges that she was subjected to a pattern of inappropriate and non-work-

10  related questions about her individual religious beliefs, including whether or not she

11  was vaccinated.  Additionally, Plaintiff contends that she was ridiculed for her religious

12  conviction and was treated differently than other employees who were vaccinated and

13  was harassed with invasive questions and verbally abused by her superiors.

14      "[H]arassment focuses on situations in which the social environment of the

15  workplace becomes intolerable because the harassment (whether verbal, physical, or

16  visual) communicates an offensive message to the harassed employee." *Roby v.*

17  *McKesson Corp.,* 47 Cal.4th 686, 706 (2009) (emphasis in original); *Serri v. Santa Clara*

18  *Univ.,* 226 Cal. App. 4th 830, 869 (2014).  "A workplace may give rise to liability when

19  it is permeated with discriminatory [ ] intimidation, ridicule, and insult that is

20  sufficiently severe or pervasive to alter the conditions of the victim's employment and

21  create an abusive working environment[.]"  *Lyle v. Warner Bros. Television Prods*., 38

22  Cal.4th 264, 279 (2006) (internal quotations and citation omitted).  To establish a claim

23  of FEHA harassment, a plaintiff must demonstrate that: (1) [s]he is a member of a

24  protected group; (2) [s]he was subjected to harassment because he belonged to this

25  group; and (3) the alleged harassment was so severe or pervasive that it created a

26  hostile work environment." *See Lawler v. Montblac N. Am., LLC,* 704 F.3d 1235, 1244

27  (9th Cir. 2013).  "Harassment cases are rarely appropriate for disposition on summary

28  judgment."  Cal. Gov't Code § 12923.

1     Defendant argues that Plaintiff's religious harassment claim is meritless because

2     she admitted at her deposition that she was not harassed based on her religion and

3     was not aware of anyone who had a bias against her because of her religion.  Plaintiff

4     argues that a co-worker, Amanda who worked as an Associate Support Department

5     Specialist, singled Plaintiff out by telling Plaintiff to pull up her mask but said nothing

6     to other co-workers.[12]  Plaintiff also argues that she was given points as a punishment

7     for no valid reason and in August 2022 was required to remove her religious pins from

8     her apron and her computer, while other co-workers were allowed to keep their

9     symbols .  Lastly, Plaintiff argues she was forced to take medical leave to keep her job.

10    Here, the conduct that could potentially serve as harassment would be the

11    disproportionate assignment of attendance points and the removal of her religious

12    pins.  The evidence supporting Plaintiff's claim on the issue of the points is her own

13    declaration stating that Amanda gave her negative points for the same things others

14    would do.  (Sullivan Dec. ¶ 18.)  However, Plaintiff does not dispute that she received

15    points because she violated the company policy and provides no evidence of said

16    other employees who violated the attendance policy were not given attendance

17    points.  (*See id*.); *see also Roby,* 47 Cal.4th at 706 (explaining that "the exercise of

18    personnel management authority properly delegated by an employer to a supervisory

19    employee might result in discrimination, but not in harassment.").  Moreover, these

20    instances are not so "severe or pervasive" so as to constitute harassment.  *See Lyle*, 38

21    Cal.4th at 283 (stating that FEHA does not create liability for "harassment that is

22    occasional, isolated, sporadic, or trivial[ ]").  Finally, as Defendant argues, Plaintiff

23    appears to be uncertain as to whether this conduct was directed toward her because

24    of her religious beliefs, and what the circumstances regarding the discipline of other

25    employees entailed.  (Chun Supp. Dec. (ECF No. 47-1, Ex. C) at 105:21–107:23.)

26

27    ───────────────

      [12] Plaintiff admits not knowing if other employees were in fact told to pull up their masks by Amanda.

28    (Chun Supp. Dec. at 104:8–105:19.)

1   Accordingly, Defendant is entitled to summary judgment as to Plaintiff's religious

2   harassment claim.

3       **D. Medical Condition Harassment and Discrimination**

4       Plaintiff brings additional causes of action under FEHA for alleged violations of

5   harassment and discrimination premised on Plaintiff's health conditions.  Beginning

6   with harassment, Defendant argues that summary judgment is proper because

7   Plaintiff admitted that she had not been harassed based on her medical conditions.

8   Plaintiff argues that she was forced to take medical leave because of her religious

9   beliefs since she not allowed to work without a mask.

10      Here, the evidence presented does not show conduct that was so severe or

11  pervasive so as "to create a hostile or abusive working environment." *Serri,* 226 Cal.

12  App. 4th at 870.  Rather, in light of Plaintiff's statements to store management that she

13  was unable to wear a mask due to her medical conditions, she was granted paid leave

14  for a year.  (PSSUF ¶ 79; DSSUF¶¶ 11–14.)  Plaintiff also concedes that her "medical

15  leave had nothing to do with the conflict of her religious beliefs with Home Depot's

16  mask requirement." (Opp'n at 7.)   These statements compel finding that summary

17  judgment on the medical harassment claim under FEHA is proper.

18      Turning to discrimination based on medical condition, Defendant argues that

19  through her own testimony, Plaintiff again admits that she was not treated unfairly

20  based on her medical conditions and was not aware of anyone who had bias against

21  her because of her medical conditions.  Plaintiff does not include any response to this

22  argument in her opposition.  Absent any argument or evidence to the contrary, the

23  Court finds that no genuine dispute of material fact exists.  Accordingly, summary

24  judgment is GRANTED as to Plaintiff's eighth cause of action.

25      **E. Retaliation**

26      Plaintiff also brings a claim for retaliation under FEHA.  FEHA prohibits an

27  employer from discriminating against an employee based on religion and prohibits an

28  employer from retaliating against an employee because he has made a charge of

1    discrimination or opposed a discriminatory practice.  *See* Cal. Gov't Code § 12940(h).

2    Courts again apply the burden shifting process described in *McDonnell Douglas* to

3    FEHA retaliation claims.  *See Wilkin v. Community Hospital of the Monterey Peninsula,*

4    71 Cal. App. 5th 806, 828 (2021).

5                          **1. *Prima Facie* Case**

6          To state a *prima facie* claim of retaliation under FEHA, a plaintiff must show that

7    (1) she engaged in a protected activity; (2) her employer subjected her to an adverse

8    employment action; and (3) a causal link exists between the protected activity and the

9    adverse action.  *Nazir v. United Airlines, Inc.,* 178 Cal. App. 4th 243, 287 (2009).

10         Defendant first argues that Plaintiff cannot establish a *prima facie* case of

11   retaliation because there is no evidence of a causal link between any protected act

12   and the termination of Plaintiff's employment.  Specifically, Defendant points to

13   Plaintiff's statement she does not believe she was retaliated against based on her

14   accommodation requests.  (Chun Dec. at 253:15–24.)  Plaintiff objects to such

15   testimony as calling for a legal conclusion and for being taken out of context.  Plaintiff

16   also contends that when she, a Christian, objected to wearing a mask for religious

17   reasons, complained about being discriminated against to three of her supervisors,

18   and was then terminated, retaliation was established.  (Opp'n at 19.)

19         Although the timing between Plaintiff's statements about refusing to mask and

20   her termination are close, review of the undisputed facts demonstrates that Plaintiff

21   was asked to leave the store after she turned down the proposed accommodation and

22   refused to mask, did not leave, and was terminated.  These facts do not support a

23   finding that Plaintiff was terminated for requesting an accommodation or other

24   protected activity and instead show that Plaintiff was terminated for failing to abide by

25   directives from her superior.  Moreover, the Policy cited to by Plaintiff shows that "all

26   lines of business" were required to mask in accordance with state or local guidelines,

27   and that California locations were required to comply with California regulations and

28   Cal/OSHA's requirements where a location was in "outbreak status."  (*See* Policy at 2);

1  *see Hodges v. Cedars-Sinai Med. Ctr.,* 91 Cal. App. 5th 894, 914 (affirming summary

2  judgment in defendant's favor on retaliation claim where plaintiff acknowledged in her

3  briefing that her employer "terminated [her] because she did not get the

4  [flu] vaccination," making "any claim it terminated her for requesting a reasonable

5  accommodation untenable").  Thus, there is no dispute of material fact as to Plaintiff's

6  cause of action for retaliation.

7  **V.    Bane Act**

8        Plaintiff also brings a cause of action under the Bane Act.  Defendant argues

9  that this cause of action is meritless because Plaintiff admits that no one threatened

10  violence against her and she did not have a fear that if she exercised her constitutional

11  rights, she would be subjected to violence.  Plaintiff contends that she experienced

12  coercive pressure and an intolerance through her beliefs that kept her from exercising

13  her constitutional right to religious freedom.  Plaintiff also argues that a threat of

14  violence is no longer needed to support a claim under the Bane Act.

15

16        "The essence of a Bane Act claim is that the defendant, by
       the specified improper means (i.e., 'threats, intimidation or

17       coercion'), tried to or did prevent the plaintiff from doing
       something he or she had the right to do under the law or to

18       force the plaintiff to do something that he or she was not
       required to do under the law."

19

20  *Shoyoye v. County of Los Angeles,* 203 Cal. App. 4th 947, 955–56 (2012).  Liability

21  under the Bane Act may not be based on "speech alone" unless "the speech itself

22  threatens violence."  Cal. Civ. Code § 52.1(k).  California courts have expressed

23  uncertainty as to whether a Bane Act claim requires a threat of violence or whether

24  intimidation or coercion involving a nonviolent consequence would suffice.  *See*

25  *Shoyoye*, 203 Cal. App. 4th at 959, (stating that the court "need not decide that every

26  plaintiff must allege violence or threats of violence in order to maintain an action

27  under section 52.1."); *City and Cnty. of San Francisco v. Ballard*, 136 Cal. App. 4th 381,

28  408 (2006) (noting the issue but finding it unnecessary to address)).  However, the

18

1   Court need not reach this issue because Plaintiff's substantive causes of action

2   alleging violations of state law have failed for the reasons discussed above.  The Court

3   also notes that Plaintiff's claims about her constitutional right to religious freedom and

4   not adequately explained.  The Opposition cites to several of Plaintiff's own

5   statements but does not outline what legal authority she is referring to.  (Opp'n at 6.)

6   Thus, Defendant is granted judgment as a matter of law as to this cause of action.

7   **VI.    Constitutional Right to Privacy**

8          Plaintiff next brings a cause of action under the California Constitution, alleging

9   that Plaintiff has a protected privacy interest in her bodily integrity, and the right to

10  choose which medical treatment she receives.  Moreover, Plaintiff argues she has a

11  right to exercise informed consent to accept, or not accept, novel medical treatments

12  without pressure from the State.  As such, Plaintiff contends that Defendant's

13  managing agents' actions in, mandating that Plaintiff wear a mask or be fired

14  constituted a serious invasion of her privacy without a legitimate employer interest.

15         The California Constitution establishes an express right to privacy.  *See Hill v.*

16  *Nat'l Collegiate Athletic Ass'n,* 7 Cal.4th 1, 20 (1994); *Wilson v. Cal. Health Facilities*

17  *Com.,* 110 Cal. App. 3d 317, 324 (1980) (explaining that the California Constitutional

18  right to privacy "protects a larger zone in the area of financial and personal affairs than

19  the federal right.").  However, this right is balanced against "other important interests"

20  and may be outweighed by supervening public concerns.  *Hill,* 7 Cal. 4th at 37.  The

21  party asserting a privacy right must establish "a legally protected privacy interest, an

22  objectively reasonable expectation of privacy in the given circumstances, and a

23  threatened intrusion that is serious."  *Williams v. Superior Court,* 3 Cal.5th 531, 552

24  (2017) (citation omitted).

25         Here, Defendant does not deny that right a to privacy exists in protecting

26  medical history and information.  Instead, Defendant argues that none of Plaintiff's

27  claims allege an infringement on such a right.  Plaintiff argues that because Defendant

28  was not the "state" or a "health officer with police power over health emergencies" a

1   dispute exists by Defendant "demanding to know one's vaccination status." (Opp'n at

2   22.)  Moreover, Plaintiff contends that Defendant had no legitimate business interest

3   in determining whether employees had to mask.

4          The Court rejects Plaintiff's arguments to the extent that they rest on

5   Defendant's following of the State's masking requirements.  Moreover, the undisputed

6   facts illustrate that Plaintiff was not required to get vaccinated, wear a mask, or be

7   fired. (*See* DSSUF ¶ 32 explaining that Plaintiff was offered unpaid leave while the

8   store was in outbreak status; DSSUF ¶ 14 explaining that Plaintiff took paid medical

9   leave due to her health restrictions around masking.)  Additionally, at the time of

10  Plaintiff's termination, there was a requirement that all employees – regardless of

11  vaccine status – wear a mask when the store was in "outbreak" status, such that

12  information about her vaccination status does not appear to have been at issue. (Def.

13  RJN Exs. J, K.)  Thus, the Court finds that no genuine dispute of material fact exists as

14  to Plaintiff's fourth cause of action for a violation of the California Constitution.[13]

                                     **CONCLUSION**

16         For the reasons discussed above, the Court GRANTS Defendant's Motion for

17  Summary Judgment (ECF No. 36) in its entirety.  This Order resolves all outstanding

18  motions, and the Clerk of Court shall enter judgment and close this case.

19         IT IS SO ORDERED.

Dated:   **November 17, 2025**

                                     Hon. Daniel J. Calabretta
                                     UNITED STATES DISTRICT JUDGE

---

[13] Plaintiff states that her wrongful termination in violation of public policy claim is in violation is based on her constitutional right to religious freedom.  However, Plaintiff has not specified which constitution, or constitutional provision she is tying this claim to.  To the extent that her claim for wrongful termination in violation of public policy is derivative of her FEHA causes of action or her California Constitution right to privacy claim, the Court finds that it is derivative and also fails.  *See, e.g., Ashcroft v. Southern Cal. Permanente Med. Grp.,* 763 F. Supp. 3d 1133, 1141 (S.D. Cal. 2025) (dismissing a termination in violation of public policy claim where plaintiff failed to establish a violation of public policy premised on her FEHA claims).  Additionally, the Court does not address Defendant's argument relating to punitive damages or seeking alternative employment because the other causes of action fail.